Good morning, your honors. I'm Michael Schein and I represent Seahawk Seafoods. I'd like to reserve four minutes for rebuttal if I may. Okay, just stop while you've still got four minutes and then you've got it. Thank you, your honor. And Mr. Sullivan, trial counsel, is present in the courtroom along with Mr. Burtis and the president of the company. The sole question presented by this appeal is whether the bankruptcy court had subject matter jurisdiction over a dispute between creditors of a former debtor presented to the court over two years after it had dismissed the underlying bankruptcy proceeding. The present dispute between Seahawk and the state is a state law claim by Seahawk against the state of Alaska for civil conspiracy for participating in a fraudulent scheme to avoid Seahawk's judgment lien by funneling operating funds to VFDA, the former debtor, through a secret account. The state defended by asserting that it was released by the settlement agreement between Seahawk and VFDA, the former debtor, even though on the face of the settlement agreement it is only between VFDA and Seahawk. In the post-dismissal. The agreement does say that the state of Alaska shall agree to the terms and conditions of this agreement and shall commit to and fund a loan for the VDFA. So it's a little odd, but it doesn't appear that it really appears that the state of Alaska did accede to the agreement. Your Honor, the actual agreement itself is clearly states in terms of who the operative parties are only VFDA and Seahawk, and they're the only signatories to the agreement. The state is not a signatory. There are arguments about the merits of the meaning of the agreement, and that is not the issue that we've come to the Court to present because we did stipulate that the Court would find against us in order to bring this jurisdictional issue here. In the post-dismissal adversary proceeding, the state moved to join VFDA, but that motion was denied, and therefore the debtor is not even a party to the most recent bankruptcy court proceedings. Based on these facts, I wish to emphasize two key points. First, because this dispute between creditors could not have any effect upon an estate in bankruptcy, it is outside the jurisdiction of the bankruptcy court under 28 U.S.C. 1334b. Second, the only other ways the Court could have had jurisdiction would be, first, proper retention of jurisdiction in compliance in the order of dismissal in compliance with Kokerman, which did not happen here, or, second, proper retention of jurisdiction over an existing adversary proceeding at the time of dismissal under Carraher, which also did not happen here. Focusing on the first issue, the effect on the bankruptcy estate, the only potentially applicable jurisdiction is related to a case under Title 11, which is 1334b. Everybody agrees the applicable test for related to is the PACOR, Third Circuit's PACOR test adopted by this circuit in Fites. Quote, whether the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy. And that's from Fites at page 457. The outcome of this dispute between Seahawk and the State could not conceivably have any effect on the estate being administered in bankruptcy for the simple reason that there is no estate being administered in bankruptcy anymore. As a matter of law, the April 1999 dismissal of the bankruptcy had the effect of revesting the estate in the debtor, 11 U.S.C. 349. Therefore, there is no estate. A leading case in this circuit, Fites, makes a similar point. In Fites, this court found that a debtor's spouse's cross-claim against their lender was not related to the bankruptcy, even though that claim was property of the estate because it was community property, because it was filed post-confirmation, because confirmation vests the estate back into the debtor. Since the estate was revested in the debtor, the spouse's claim could have no effect on the estate. That's 852 Federal 2nd at 458. Here, dismissal has the same effect as confirmation. Both vest the estate in the debtor. The state argued in its brief that the PACOR Fites test only applies to pre-confirmation jurisdiction. Since Fites itself applied the test post-confirmation, that argument is specious. Seahawks' principal claim against the state is under Summers v. Hagen, an Alaska case which allows recovery of damages against the state. The state has totally failed to show how a ward of damages against the state could conceivably have any effect on the bankruptcy estate of VFDA, a separate entity, especially since that estate doesn't exist anymore. Even if the state later sought indemnification. So is this argument about the bankruptcy estate that you're making cut and dry? I mean, is there some argument that one can make here that the – there was a set of understandings at the time of the settlement about what would happen to the bankruptcy estate, and although it no longer exists as an entity, it did exist at the time of the – the case was closed, and that if this lawsuit is allowed to go forward, the set of assumptions about what would be the – what would come out of the estate is going to be changed. At least that's the argument, as I understand it. So it's sort of retroactively affecting the estate. It's affecting what the assumptions were about the estate at the time it was closed and given back to the debt. Your Honor, I think it is cut and dry. I mean, I cited a long list of cases in my opening brief, I believe it's footnote four, that apply this rule when the bankruptcy has been dismissed or after confirmation and simply take this view. In Fites, there was a discussion by the Ninth Circuit about the party seeking jurisdiction tried to argue, well, we could go back and reopen the estate. And the court said, no, you know, that's not enough. There's no effect on the estate. So it's simply a very cut and dry point. I mean, we're here arguing it, but it's the opposite. So you simply can't have related case jurisdiction after the case is closed? Not unless you comply with kokanen or carrer, which is the argument. I understand that, but not under the bankruptcy code as such. Right, right. And in Pacor, another kind of argument was made. In Pacor, the party seeking jurisdiction said, well, if you get a judgment against us, we'll go and seek indemnification against the debtor. And that's the effect on the state. And Pacor rejected that and said that's a mere precursor to a potential third-party claim for identification. It's insufficient to meet the task. So the leading authority rejects the various views, you know, the various ways to try to get back at the estate. Is there an underlying policy rationale for all this that is in favor of finality of judgments, finality of bankruptcy? I think that's part of it. But I think even more so, it is the limited nature of bankruptcy jurisdiction. The purpose is to adjudicate claims against the estate. Once the estate's gone, that limited grant of jurisdiction is over and done with. It's not a broad grant like – I mean, we know that even general federal jurisdiction is limited, so I won't say a huge broad grant like Federal District Court jurisdiction, but it's more limited than that. It has a particular purpose. When that purpose is done, go to a different court. Well, that was the concern that was on my mind that I was going to address to the State of Alaska's counsel. You may want to reserve more than your four minutes you said at the start for your argument, for your rebuttal to address the State's position on these issues. I do have one question, which is, here, the appellees, as I understand it, first went to Alaska State court and said, would you please interpret the agreement? And they said, no, no, no, go to the bankruptcy court, right? The bankruptcy court now says that they don't have jurisdiction. I assume that you will agree, if they get back to the State court, that the State court now should make that decision. You're not going to start arguing that the State court's already made the decision that they're not going to do it. No. Basically, the State court looked at the settlement agreement and said, well, that says that the bankruptcy judge is supposed to interpret the agreement, so I'll defer to the bankruptcy judge. But the State court did not rule on Federal court jurisdiction, nor could it have. I understand that. They don't take it to a – in some race to a decatur of collateral. Stoppaway refused to rule on the agreement such that they're going to be left with nobody to decide. No, no, because they haven't said they don't have jurisdiction. Once they hear that the Federal court doesn't have jurisdiction, I'm sure that the State court will take it. Well, just to make sure I'm not confused here, what did the bankruptcy court say after the referral from the State was followed by the parties? Well, the bankruptcy court – What did the district court say? I thought the bankruptcy court said that they took jurisdiction. Yes, it did. It said that Alaska was discharged. Right. We're the appellant here because – The district court affirmed that, right? That's correct, Your Honor. And then so you're appealing saying, no, the bankruptcy court didn't have jurisdiction because there was no further bankruptcy and jurisdiction wasn't retained over this agreement. Correct. And the district court made a mistake. Correct. All right. One last question, please. In any of the Kekona line of cases, is it plain from the report of the case that there was, as there is here, an express reservation in the agreement with regard to the district court's role in interpreting it? I understand that there's a problem as to whether that would be sufficient given that it's difficult to confer jurisdiction in an agreement. But I'm just curious as to whether there's any other case with a fact like that. Well, the court in this circuit in O'Connor v. Colvin says, quote, Indeed, even a district court's expressed intention to retain jurisdiction is insufficient to confer jurisdiction if that intention is not expressed in the order of dismissal. There was a case I think considered also in the discussion of O'Connor v. Colvin where the judge said, I'm going to act as your settlement czar, but it was not put into the order of dismissal. The presence in the settlement agreement is not enough under Kokanen because Kokanen expressly says the reservation of jurisdiction or incorporation of the terms have to be in the dismissal order. So that's been covered by the court. The answer to my question is no, but it doesn't matter. Well, not exactly. The answer to your question is that O'Connor v. Colvin specifically addresses that and says it doesn't do to have it elsewhere. Plus, there's the whole line of cases that say parties can't by private agreement confer jurisdiction on the Federal court, which I've cited to the Court. Kokanen holds that enforcement of a settlement agreement is more than just a continuation or renewal of dismissal of suit and hence requires its own basis for jurisdiction. Interpretation of the VFDA settlement agreement is just as much a state contract question as enforcement, and it requires its own Federal bankruptcy jurisdictional basis. No independent basis for Federal jurisdiction, bankruptcy jurisdiction, has been shown over that state law question. Kokanen establishes a bright line rule for doing that. Either the order of dismissal, and that's the express language of Kokanen at page 381, must have a separate provision expressly retaining jurisdiction over the agreement or it must incorporate the terms of the settlement agreement into the order. Neither of those things were done here. The stipulated dismissal order here recited prior approval of the settlement agreement and said the conditions of the settlement having been fulfilled, the case is dismissed. That's a mere recital of historical events, not a separate provision, a retaining jurisdiction or incorporation of the terms of the settlement agreement into the order. Therefore, it does not satisfy Kokanen. As stated expressly by the Court in Kokanen, quote, the judge's mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of the order. That's 511 U.S. of 381. Kokanen sets forth a bright line rule which has been strictly followed by the courts since it was announced. In this circuit case of O'Connor v. Colvin, the order of dismissal stated, quote, based on the settlement agreement among the parties, the stipulation for dismissal amongst the parties and for good cause, the case is dismissed. Just like here, that is a mere recital of the settlement agreement, not a retention of jurisdiction or incorporation of its terms. This circuit held, quote, that an order based on the settlement agreement without more does not embody the settlement contract and is insufficient to create ancillary jurisdiction. Close quote, 70 Federal 3rd and 532. It's said to view it otherwise would eviscerate Kokanen because all dismissals after settlements are essentially based on the settlement. This court in Colvin further said, quote, the settlement terms must be part of the dismissal in order for violation of the settlement agreement to amount to a violation of the court's order, which is what Kokanen requires, and that, quote, without a violation of the court's order, there is no jurisdiction. The present case is indistinguishable. The settlement terms are nowhere to be found in the dismissal order. The recital, the conditions of the settlement having been fulfilled, is no different from the recital in O'Connor v. Colvin, that dismissal is based on the settlement agreement. Neither is sufficient to make breach of the settlement a violation of the court's order, and the bright-line rule of Kokanen is not satisfied. I want to very briefly address the Karrher issue. Karrher creates limited discretion to retain jurisdiction over an existing adversary proceeding at the time of dismissal of the underlying bankruptcy. It is not applicable here. First, there was no action in bankruptcy for the court to retain jurisdiction over because even as the State admits, quote, there was no actual adversary proceeding for fraudulent conveyance pending in the FDA's bankruptcy as brief of appellee at 30. While it's true the debtor in possession could have brought such an action, it never did so. Second, while Karrher allows the court to retain jurisdiction over a claim pending at the time of dismissal, it is clear the court never did that. It tried to say several years after dismissal that it wanted to retain jurisdiction. Thus, what it did was the court is claiming a power at a later time to decide that it should have exercised discretion to retain a claim that the debtor in possession could have asserted in the bankruptcy but didn't. This isn't allowed by Karrher or any other authority. And I will reserve my 3 minutes and 15 seconds for rebuttal, please. We request that the district court be reversed. Thank you. Ms. Beardsley. Good morning, Your Honors. I'm Mary Ellen Beardsley. I'm an Assistant Attorney General with the State of Alaska, and I represent the State of Alaska, the Division of Investments. I would like to make some maybe major corrections here. The Seahawk claims that there was a two-year wait before we got back to the bankruptcy court. Does that matter? No, it doesn't, because that two-year was based on all of the appeals that were going on in the State court action. That is the only reason why. Getting to the crux of it, why would the bankruptcy court have some continuing why would it have jurisdiction if the bankruptcy is concluded and it hasn't retained jurisdiction in this prior order? I think, first of all, under Cacone, and I think the State has retained jurisdiction. Cacone actually does state at page 381 that in a case where it's a Rule 31A2 dismissal, as it is here, that the party's compliance with the terms of the agreement or the contract may be one of the terms that is set out in the order. That's exactly what's happened here. Well, actually, it seems like it's sort of the opposite of what happened here. What happened here was the agreement says the terms of the agreement having been complied with, i.e., and the case is dismissed. In other words, as far as the dismissal order is concerned, there's nothing left to be done. Well, except the dismissal is based on all of the assurances from all of the parties that all of the terms have been met. And one of those terms, which is absolutely crucial, was the release of all the claims by Seahawk in the State court action. Well, the recital in the order states that there's been compliance. It doesn't say the Court is retaining jurisdiction to ensure there will be compliance or continuing compliance or to oversee compliance. That's what's missing in this case. But I don't think Cacone requires that there be an express retention, that it be verbatim. I thought it did. No, I don't think it does. I think that it also says there can be both. There could be one or the other. I think if the way I read Cacone is that if the parties have, if the order actually references the parties' compliance with all of the terms of the contract, that that is sufficient by reference to include the terms of the settlement agreement within that order. And part of the terms of that settlement agreement was that the Court would retain jurisdiction to determine the effect of this agreement. If, and if a violation of that settlement agreement, that if there's a violation of that settlement agreement by virtue of Seahawk now claiming they didn't release all of its claims, there's a violation of that agreement, then there's a violation of the dismissal order. And the State has the right to basically retain the jurisdiction, to vindicate its authority and to effectuate those, its decree. It can't do it any other way. Kagan. One of the things that Cacone knows, I think it's Cacone, is that another way of going at this would be to reopen the case under Rule 60B or the bankruptcy equivalent thereof. But I gather you didn't do that. The FDA, the debtor in this case, did not do that. No. It was actually Seahawk who requested that the case be reopened. So, I mean, that is a potential down the line. But the other thing that Seahawk seems to be arguing is that simply because there's no bankruptcy estate, therefore, there's no related to proceeding. And I disagree with that. I think that there clearly are. Kagan. Is there any case law supporting your position? It makes some sense, but is there any case law supporting it, including? I mean, doesn't all the Ninth Circuit law talk about bankruptcy estate? Well, I think that the PACOR test does both. The PACOR test clearly states, and even FITES supports this, that the proceeding need not necessarily be against the debtor or the estate. An action is related to the bankruptcy if the outcome could alter the debtor's rights, liabilities, options, et cetera, and also impact the estate. How would the determination that Alaska owes some money to the claimant alter the rights of the bankrupt here? Well, first of all, the damages here are actually the result of a possible fraudulent conveyance claim would actually be a return of a million dollars to the debtor, not to Seahawk. And that's clear under all of the case law in Alaska. Well, that's not really answering the question I just asked you. But it does affect the debtor. I mean, it affects the debtor's rights and liabilities, because if we had to return a million dollars back to the debtor, the million .7 that was given to us, we'd use it in other ways. I thought they were asking for a remedy in the State case of you have to remit the funds to them under a State tort theory. That's not how it works, though. Is that what they're asking for in the State case? The State tort case or theory has not been approved yet by the State court. I understand that. But is that what they're asking for in the State case? It's not clear. They've asked for a fraudulent. They basically claim that there's a fraudulent conveyance. And even under either one, I think that the remedy is the return of the money back to the debtor. The case that's remaining against Alaska at this point is a conspiracy case against Alaska, presumably asking for damages from Alaska for the fact that the money wasn't returned to them by the debtor. In other words, it's for damages against the State of Alaska for conspiracy. It's not directly a fraudulent conveyance case. Am I wrong about that? No, I think they're both – I think they're still both pending. I mean, the fraudulent conveyance action has not been dismissed, and only any claims against the debtor, the FDA, have been released according to Seahawk. If there's a fraudulent conveyance, it's really a question of State law, what the remedy for that is. Absolutely. It's not a Federal question. But someone could say that the State court would have discretion to give a remedy to the claimant rather than to say the funds go back to the debtor. I mean, possibly. That's a question that I guess would be up to State court judges to decide. Absolutely, Your Honor. The question for us to decide is what does a Federal bankruptcy court have to do with this at this stage? Well, I think, Your Honor, what it has to do – it's not the fraudulent conveyance or conspiracy claims that are before it. It's the scope of the settlement agreement. That's the only issue here. The fraudulent conveyance has nothing to do with it. And even the bankruptcy court agreed that it was not hearing that. What does the State court action have to do with the settlement agreement with respect to the bankruptcy? If the bankruptcy is already dismissed and the court didn't retain jurisdiction about this agreement, how does the State – how does the State court remedy affect the bankruptcy? How does the State court action affect the bankruptcy? Well, I don't think it necessarily – you can't affect the bankruptcy as State because it doesn't exist anymore. So you're saying it can be related to the bankruptcy even though it has no effect on it? But it doesn't have to have just the effect on the bankruptcy as State. It can have an effect on the debtor. All right. So let me go back to that. I'm reading Feitz, and it's quoted in PACCOR, and it says it has to have any effect on the estate being administered in bankruptcy. And it's – and then he goes on to say that it's related to the bankruptcy if the outcome could alter the debtor's rights and in any way impacts the handling and administration of bankruptcy as State. Do you have any case – in this case, the bankruptcy as State is closed. So it doesn't affect the bankruptcy as State. Do you have any case in which the bankruptcy as State is closed, but nonetheless the related case – The Hollies case, I think, that I have cited in my briefs, which dealt with not a dismissal of the case, but a post-confirmation issue. And Hollies clearly indicated that the PACCOR case and its other progeny from the PACCOR decision were all issues dealing with pre-confirmation issues. But – and that's why it dealt with the bankruptcy as State. But what happens when there is a dismissal or a post-confirmation issue? After confirmation, the estate reverts back into the debtor, just like it does in a dismissal order. And I think you have to go further than PACCOR. I mean, because PACCOR is just for pre-confirmation issues, you have to look at it. Does – is there an effect on the debtor, which in essence is almost like an effect on the estate, because the estate has merged back into the debtor when that dismissal has occurred? There really is no estate at this point. There is no estate. It's an effect on the debtor, but not an effect on the bankruptcy as State. Right. But I don't – but because of the uniqueness of this particular issue, dealing with post-confirmation or post-dismissal, you can't necessarily read PACCOR to be so limiting. I think you have to look at the broader picture and see if it has an impact on the debtor. Well, is there still a debtor? Once the estate is closed, isn't it fair to say that the VFWD no longer has the status of a debtor because the estate is closed? Well, there are – they're the State's debtor, though. I mean, yeah, they're now a debtor in bankruptcy. It was a debtor in bankruptcy. Yes. But the estate is closed, so doesn't it cease to be a debtor? It's discharged. Well, in a dismissal order, it's not discharged. It's as if it didn't ever occur. But the effect on the – Well, the bankruptcy is discharged. The – not in a – not in a dismissal. In this – there's no discharge. It says the bankruptcy is – Well, but when the case is closed, the debtor is discharged, and it's no longer a debtor. Oh, yes. And you treat the VFW as though it continues to be a debtor. Isn't that a violation? Well, I think you have to, again, look at the broader terms under the test for PACOR. And does the proceeding have an effect on the debtor? Well, let's say that on the party that now is not the debtor in bankruptcy but used to be. Right? Right. Okay, so let's say just some other claimant materialized who had a claim against Valdez that would have affected the bankruptcy had it been asserted at an earlier stage while the bankruptcy was pending, but it wasn't. Now, could the bankruptcy court jurisdiction be invoked? I don't think so, necessarily. What's the difference of that case and your case? Well, first of all, in my case, the fraudulent conveyance action was pending at the time of the bankruptcy. And it was brought in and became a part of the bankruptcy estate. But it's all settled. Well, we think it's all settled. The State does. But Seahawk is claiming that, no, we've only settled with the VFW. Well, you may have a defense in the State court action if your interpretation of the agreement prevails. But they offer a different one. So you still have your argument in the State court. I don't. But why is there a bankruptcy court jurisdiction? Because I think it's related. In that aspect, I think it is related to because there is an effect on the debtor. Why wouldn't it? In the case I pose, hypothetically, where there was nothing pending before in the bankruptcy when it was a bankruptcy, but the hypothetical claim, I'm assuming, would have affected had it been asserted then. Why is that different than your case? Again, I think it's because the claim was not asserted at the time of the bankruptcy. In this case, it's the uniqueness of the bankruptcy code. But the fraudulent conveyance action actually became part of the bankruptcy estate. And the bankruptcy court had jurisdiction over that particular sort of asset. It would not have had jurisdiction over just a fraud claim. No, not as well. If the claimant has a fraud claim, if Seahawk has a fraud claim against Alaska, that wouldn't have necessarily been part of the debtors. Correct. No, but in this case, because the fraudulent conveyance claim became a part of the bankruptcy estate. So it was an asset. Yes. Is that what you're saying? Yes. And what you're saying is after the bankruptcies closed, the bankruptcy court may still have jurisdiction over things that happened to things that were assets in the bankruptcy. Correct. Well, that's a very broad proposition, wouldn't you say? Not necessarily. Not necessarily, but potentially. Let's say Valdez had a piece of real estate that was within its estate in the bankruptcy. And now it goes to sell that. Could the bankruptcy court jurisdiction be invoked if it was selling it for too little? No. Or too much? No, no. And I agree that at that point after a dismissal, because the property reverts back to the debtor, no, the bankruptcy court would not. But in this instance, because of what led up to the settlement agreement and the dismissal, I mean, the dismissal was predicated completely on all of the terms and conditions of that settlement, or the dismissal of the Chapter 11 was predicated on all of the terms and conditions of the settlement agreement being fulfilled. Well, the agreement may be an affirmative defense in the state court action, you know, if it releases the state. But still, we have the problem of what's the bankruptcy court jurisdiction at this stage? Well, I think that the bankruptcy court, by the very terms of the dismissal order, our opinion is that that is sufficient. And that is a sufficient reference to the settlement agreement to meet the court. What a problem it could have been. I mean, obviously, what's so frustrating about this case is that it makes all the sense in the world for the bankruptcy court to be interpreting this agreement rather than the state courts. And it would have been very simple to provide that it would have, but it wasn't done that way. That's what's wrong. It's quite frustrating. And it's very frustrating for us, too. But the intent was there. The state wouldn't have entered into and approved the settlement if we didn't believe we were being dismissed. And unfortunately, we did not. Our name wasn't on the signature line in the settlement agreement, but without us, it would never have happened. So we're clearly part of the whole picture. Right, but federal courts, including the bankruptcy court, have defined jurisdictions. So the question for us is, given this unusual set of facts, is there any case where a court has gone as far as you'd like the court to go and as far as the district court and bankruptcy court went here in sort of reinvigorating a bankruptcy court jurisdiction? I don't think there's a case absolutely on point. But again, I think Holly's decision that had a lengthy discussion on related to and why in a post-confirmation situation, the court had the right or had the authority. Holly's is a little peculiar because, as I understand it, the cause of action they wanted to bring was actually under the bankruptcy code. It was, yes. So that's not true at all. This is just here we're just dealing with a State court. Well, no. Here we're not really dealing with a State court action. All we're dealing with is the scope of the settlement agreement. That's all we're asking is to determine and interpret the settlement agreement. But the actual order that was stipulated to is an order, as I understand it. It says that you are essentially, that there's an order that the agreement shall be enforced in this fashion. It uses the word order. It doesn't – I mean, if it was just interpretation, it would be a different problem, which is how do courts just sit here and interpret things and not do anything. But it's essentially a declaratory judgment, which is specifically intended to have res judicata effect. Well, we've stipulated in the Bankruptcy Court that it would not. I mean – And it would. Well, it would if the – if this Court agrees that the Bankruptcy Court had the right to retain jurisdiction, yes, then the State court action would basically be – I mean, I would think the State court action would be over, because the State courts, both the Superior Court and the Supreme Court, have asked the Bankruptcy Court to determine the scope of the settlement agreement. And based on the fact that the – I think the Bankruptcy Court wants to hear this. I mean, it's their – their decree and their authority is at issue here. And the parties, even though the parties technically can't say you court retained jurisdiction, they agreed that the Bankruptcy Court was the best place to have any kind of discussion of this point. But, again, the Bankruptcy Court felt that under the four points of Carher that it was the most proper place for it to determine the scope of this – of this issue. I would simply like to conclude very briefly that the condition preceding to the dismissal of the Chapter 11, in our opinion, was that all the terms be – that all the terms of the settlement agreement be fulfilled. And if that hadn't happened, the dismissal would never have occurred. Any violation, again, of the settlement agreement in our position is a violation of the dismissal order. And the Court has ancillary jurisdiction to interpret the scope of the settlement agreement. Did Alaska or Valdez ever go to the Bankruptcy Court and say, this – the terms of this agreement have not been complied with and we want to reopen the dismissal? No. We've not argued that. And I think that that is something – I mean, we've not argued that. We – That would be, obviously, the approach. That would be a – To the position. That could be a 6dB motion in that it should be – it should be reopened. But that – that has not occurred. No, that's not occurred in this case. And that's the one route that Conconin points to. It does. But at this point, that hasn't occurred by – by the debtor. So – but, again, I think the – I think the Taylor and Franklin cases, they recognize the right of a – of the Bankruptcy Court to basically determine the – the effect of dismissal – or the effect of pre-dismissal orders. And I think even Conconin recognized that these courts have – What's the pre-dismissal order here? Well, the – the dismissal order itself. What? The dismissal order, not a pre-dismissal order. Well, anything that's pre – pre-closure of the case, that – I think those cases stand – Which include the dismissal. I want to know what order you're suggesting could be reviewed. The dismissal order itself is what we're asking. That's the key. And if it hadn't – if the conditions of the settlement agreement weren't fulfilled, then that dismissal order should not have been entered. And there's been – there's some – It's not stated that way. It's stated as a historical fact. It's not stated as, you know, on the condition that the – all he had to do was say, on the condition that the terms of the settlement agreement are fulfilled, this would be – this is dismissed, or this is dismissed on the understanding that it will be fulfilled. But he didn't say that. He said they were fulfilled. Right. But that's based on all the assurances after a hearing and after the assurances by all the parties that the conditions have been met. And the order also says that the conditions having been fulfilled and the parties having agreed, therefore, we're going to dismiss this case. And to me, that – The parties to the agreement, that's another problem, which is you were not a party to the agreement in the sense that your name was on the signature line. There is this phrase that says that the State of Alaska agrees, but when he was referring to the parties, presumably he was referring to the parties, and that was – Again, it's based on – I mean, without us, it wouldn't have happened. And so technically, I mean, our argument is we're a third-party beneficiary to that settlement agreement. And clearly, the FDA and the State were under the assumption that all of the claims in the State court action would be dismissed. Thank you. Okay. Thank you, Ms. Pursley. Mr. Connolly, you've got 3 minutes and 13 seconds, so. Thank you, Your Honor. With respect to the point that Kokanen allows an order that's on condition that the terms are fulfilled to be enough, we don't agree. Kokanen is very clear. You have to incorporate the terms or retain jurisdiction to police. But even – Is he not incorporating the terms? I don't think so. Why not? But, you know, because an incorporation of the terms says, lays out the terms, as was done in the Taylor case that was cited. It actually lays out the terms for a specific case. No. Incorporation by definition doesn't lay out the terms. It incorporates the terms. Even if that's so, Your Honor, it's very clear, as you yourself pointed out, this order does not condition compliance on compliance with the – or condition dismissal on compliance with the terms. It's merely a historical recital. The next point made was that the damages remedy was simply nonexistent. That's wrong. It's not a fraudulent conveyance alone. The claim under the Summers case is a claim for conspiracy that allows damages. Reading from the Alaska Summers case, if voiding the transfer is inadequate, however, the plaintiff is entitled to damages equaling the lesser of the value of the property fraudulently transferred for the amount of the debt. That's 852 Pacific Second at 1170. Is there still a fraudulent conveyance case also pending? I don't think so because we've released the debtor, VFDA. Our principal claim is the conspiracy claim, and it's against the fraud and the conspiracy claim against the State for damages. Now, we can argue in State court over whether we satisfy the terms of this cause of action, but that's still, in terms of the effect on the Estate, there is no effect on VFDA. We've released VFDA. Seahawk has no interest in going after VFDA. Your Honor asked a question about VFDA coming back to reopen the case. VFDA has no interest in it. It opposed being joined when the State tried to join it because it's been released, it has paid its money, it's done, and Seahawk is not going after VFDA. It's honoring its settlement with VFDA. The State made the argument that you can look at the effect on the debtor alone. Well, that's contrary to the language of a number of cases cited to the Court. I urge you to look at footnote 4 and the text accompanying it in our opening brief. The statement was again made that PACOR just applies pre-confirmation. I can't believe that statement was made. FITE relies on the fact that there's been a confirmation in order to rule that there's no jurisdiction. It was a post-confirmation case. Clearly, this test applies post-confirmation. That's a major part of its purpose. The argument was made that Hollies is the one case perhaps going almost as far as the State wants to go, but as Judge Berzon pointed out, in that case, it was a rising under the bankruptcy code. The jurisdictional basis was under 505 of the bankruptcy code. I see that my time is just about up. I want to conclude by saying that there must be more than the mere ghost of a past bankruptcy to afford the Court jurisdiction, and we respectfully request that this be determined. Thank you. Thank you very much. We thank both counsel for their good and spirited comments. Valdez v. Alaska is submitted.
judges: Gould, Berzon, Schwarzer